UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SALLY A. RANDALL, ) <br> RONA C. PEPMEIER, ) <br> Individually and on Behalf of all Others ) <br> Similarly Situated, ) <br>   ) <br>   Plaintiffs, ) <br>   ) Cause No.: 1:06-CV-0860-SEB-JMS <br>   v. ) <br>   ) <br> ROLLS-ROYCE CORPORATION, ) <br> ROLLS-ROYCE NORTH AMERICA, INC., ) <br> ROLLS-ROYCE NORTH AMERICA ) <br> HOLDINGS, INC., and ) <br> ROLLS-ROYCE NORTH AMERICA ) <br> (USA) HOLDINGS, CO., ) <br>   ) <br>   Defendants. ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Defendants, Rolls-Royce Corporation, Rolls-Royce North America, Inc., Rolls-Royce North America Holdings, Inc., and Rolls-Royce North America (USA) Holdings Co. ("Rolls-Royce"), submit the following response to Plaintiffs' Motion to Compel.

## I.   Introduction

Rolls-Royce has produced tens of thousands of pages of documents during discovery in this matter, at great cost to itself in terms of legal expenses, plus internal resources and labor. Unsatisfied with the mountain of information Rolls-Royce has produced to date, Plaintiffs seek even more information in an apparent attempt to patch-up their theory that this matter should be maintained as a class action. The information Plaintiffs now seek, however, goes well beyond the statute of limitations in this matter, beyond the requirements of the Rules of Civil Procedure

and also seeks privileged information that has not previously been disclosed or discussed in this matter. Plaintiffs' Motion is meritless and should be denied.

## II. Discussion

The party seeking discovery has the burden of showing that the information sought is both relevant and will lead to the discovery of admissible evidence. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974). *See also Fidelity National Title Ins. Comp. of New York v. Intercounty National Title Ins. Comp.*, 2002 WL 1433584, at *3 (N.D. Ill. 2002)("[h]ence, the court determines whether the record supports a finding of a Rule 26 discovery violation by a preponderance of the evidence."); *Continental Ins. Comp. v. Yazdi*, 110 F.R.D. 679, 682 (D. Col. 1986)("The burden of proof lies with the proponents to prove answers are incomplete, inadequate, or false."); *Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass 1995) (plaintiff's conclusory allegations of relevance are not sufficient). The Court has "broad discretion" when deciding whether to grant the moving party's request. *See Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (Baker, J.). "In ruling upon a motion to compel, a [D]istrict [C]ourt should independently determine the proper course of discovery based upon the arguments of the parties." *Id.* (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996)) (internal quotation marks omitted).

Courts have routinely denied discovery requests that seek wide-ranging information regarding employees who are not similarly-situated to the plaintiff. Such information is overbroad and irrelevant to a plaintiff's disparate treatment claim under Title VII. *See, e.g., Chavez,* 206 F.R.D. at 620. *See also Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002) (to establish that an employee is similarly-situated, the employee must be "directly comparable to [plaintiff] in all material respects"). Thus, discovery properly may be limited to

the relevant time period of the alleged discriminatory action, the relevant corporate department, similarly situated employees and decisionmakers. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003)(affirming limitation of discovery in this context). *See also Lute v. Consolidated Freightways, Inc.*, 1992 WL 252342 at *2 (N.D. Ind. 1992) (precluding discovery of the defendant's conduct and practices after termination of plaintiff's employment); *Rodger v. Electronic Data Sys. Corp.*, 155 F.R.D. 537, 540 (E.D.N.C 1994) (limiting discovery to time period when plaintiff was employed by defendant).

    **A.**    **The Court Should Deny Plaintiffs' Request To Conduct Discovery Of Alleged Comparators Beyond The Applicable Statutes of Limitations.**

    **1.**    **Discovery Requests and Procedural History.**

Plaintiffs' Requests for Production numbers 2, 3, 4, 10, 21, 22, 23, 24, 25, 50 and 51 sought documentation, including personnel files and compensation records, regarding multiple individuals that Plaintiffs allegedly identified as comparators in their depositions, including Steve Fromneck, Jim Gridley, Doug Hottman, Andy Cosner, Jim Skinner and Brad Bartheld.

As an initial matter, Requests for Production numbers 2-4 sought information on 60 specific individuals. Two of the individuals now identified as comparators by Plaintiffs -- Skinner and Bartheld -- *were not included* in the list of 60 individuals encompassed by these Requests for Production. Therefore, Rolls-Royce is not obligated to produce any documents relating to these individuals with respect to those Requests. Similarly, Requests for Production numbers 10, 21, 22, 23, 24 and 25, concern documents relating to *Rolls-Royce's denial* of specific paragraphs of Plaintiffs' Complaint. Rolls-Royce already has produced all documents that it maintains support its denial of the applicable paragraphs of the Complaint. Accordingly, Rolls-Royce has fully responded to these requests.

To date, Rolls-Royce has produced documents regarding all alleged comparators that come within the applicable statutes of limitations time periods. However, Rolls-Royce has consistently objected to producing information regarding comparators – and specifically Fromneck, Gridley, Hottman, Cosner, Skinner and Bartheld – where the allegations concerning them would exceed the applicable statutes of limitations in this matter.

### 2. The Applicable Statutes of Limitation.

Under Title VII, a plaintiff is required to file a charge of discrimination with the appropriate federal or state agency in order to meet the mandatory exhaustion of administrative remedies. 42 U.S.C. § 2000e-5(e)(1). The statute of limitations with respect to Title VII claims is 300 days, calculated from the date the charge is filed with the EEOC. *See Gaines v. White River Environmental Partnership*, 66 Fed.Appx. 37, at *1 (7th Cir. 2003); *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1162 (7th Cir. 1994). Any incidents allegedly occurring more than 300 days before the filing of an EEOC charge must be disregarded. *See Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 860 (7th Cir. 2005)(affirming dismissal of discrimination claims where each discrete alleged act occurred more than 300 days prior to filing of EEOC charge). Last year, the Supreme Court confirmed that this statute of limitations also applies in discriminatory pay allegations under Title VII. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162 (2007)(rejecting plaintiff's argument that company triggered a new statute of limitations whenever it issued paychecks to her following the alleged discriminatory pay decision).

In this case, Randall and Pepmeier filed their respective charges of discrimination on August 5, 2005. Thus, any discriminatory actions regarding their pay that occurred prior to October 9, 2004 [300 days before August 5, 2005], are time-barred. Correspondingly, any

disparate treatment or retaliation occurring before October 9, 2004, also would be time-barred. *Vore,* 32 F.3d at 1162.

In addition, Randall and Pepmeier's wage discrimination allegations under the Equal Pay Act are subject to a two year statute of limitations from the date of filing the complaint. 29 U.S.C. § 255(a). Thus, Plaintiffs' only viable allegations under this statute are those relating to unequal pay after May 26, 2004 – two years from the date this lawsuit was filed. Any other claims are time-barred as a matter of law. 29 U.S.C. § 255(a).

### 3. The Time-Barred Comparators

During their depositions, Plaintiffs provided the following pertinent testimony regarding the alleged "comparators" Fromneck, Gridley, Hottman, Cosner, Skinner and Bartheld:

#### a. Fromneck

Plaintiff Randall testified that Fromneck followed her into an AE1107 chief project engineer position in the April 2003 time frame and that she believes he was paid more than her. [Randall Dep., Ex. A, p. 62, 185].

#### b. Gridley

Plaintiff Randall testified that Gridley's compensation was higher than hers during the time period in which she was a chief project engineer from 1996-2002. [*Id.*, p. 184].

#### c. Hottman

Plaintiff Randall testified in her deposition that Hottman's compensation was higher than hers during the time period in which they were both chief project engineers from 1997-2000. [*Id.*, pp. 186-87]

5

### d.     Cosner

Plaintiff Randall testified in her deposition that Cosner was promoted to the chief project engineer and chief engineer positions earlier than she was in 1993-94 and 1999-2000 respectively; and that Cosner was paid more than she was while he was in the position of chief project engineer.  [*Id.*, pp. 46, 182-83].

### e.     Skinner

Plaintiff Randall discussed Skinner three times during her deposition.  At no point does she indicate that he was treated more favorably in the terms and conditions of employment.  All she states is that he replaced her in the position of Model 250 chief project engineer in 2002.  [*Id.*, pp. 59-60].

### f.     Bartheld

Plaintiff Pepmeier identified Bartheld as one of her comparators for the October 2002 time frame.  [Pepmeier Dep., Ex. B, p. 51-52].  Her remaining testimony concerning Bartheld – specifically when he left a particular position – was limited to the March 2003 time period.  [*Id.*, pp. 119-20].

The chart below summarizes the dates provided in Plaintiffs' depositions with the applicable statute of limitations time periods and graphically illustrates that all of the events are beyond the scope of the respective limitations periods:

| *Name* | *Dates Described in Deposition* | *Limitations Period* |
|---|---|---|
| Steve Fromneck | 4/03 | 5/26/04 (Title VII) 10/09/04 (EPA) |
| Jim Gridley | 1996-2002 | 5/26/04 (Title VII) 10/09/04 (EPA) |
| Doug Hottman | 1997-2000 | 5/26/04 (Title VII) 10/09/04 (EPA) |
| Andy Cosner | 1993-1994 1999-2000 | 5/26/04 (Title VII) 10/09/04 (EPA) |

6

| Jim Skinner | 2002 | 5/26/04 (Title VII) 10/09/04 (EPA) |
| --- | --- | --- |
| Brad Bartheld | 10/02; 03/03 | 5/26/04 (Title VII) 10/09/04 (EPA) |

All of the incidents involving Fromneck, Gridley, Hottman, Cosner, Skinner and Bartheld occurred more than 300 days before the filing of Plaintiffs' EEOC charge. All of these incidents also occurred more than two years before the filing of the lawsuit in this matter. Accordingly, all personnel information concerning these individuals, including their performance history and compensation is completely irrelevant and also is not reasonably calculated to lead to the discovery of admissible evidence.[1] Even if – *arguendo* – one of these individuals was paid more than Randall or Pepmeier or received a promotion that Randall or Pepmeier did not, this information would have no bearing on their claims. To the contrary, it cannot be considered by the Court. *See, e.g., Beamon,* 411 F.3d at 860; *Gaines*, 66 Fed.Appx. 37, at *1; *Vore,* 32 F.3d at 1162. Thus, Plaintiffs' request for information relating to these individuals is overbroad as a matter of law and Rolls-Royce's objections should be upheld. *See, e.g., Long v. Landvest Corp.,* No. 04-2025-CM, 2006 WL 897612, at *7-8 (D. Kan. Mar. 31, 2006) (rejecting ten-year and five-year temporal scope for discovery requests as overbroad and limiting discovery to three year period consistent with three-year statute of limitations).

### B. Rolls-Royce Has No Obligation To Supplement Its Prior Complete Discovery Responses.

Plaintiffs demand that Rolls-Royce supplement ten spreadsheets produced in discovery -- DEF1-00031745, DEF1-00031746, DEF1-00031747, DEF1-00031748, DEF1-00031749, DEF1-00034195, DEF1-00034198, DEF1-00035197, DEF1-00035198, and DEF1-00035199 -- with

---

[1] Plaintiffs' reliance on cases such as *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002); *Coates v. Johnson & Johnson,* 756 F.2d 524, 540 (7th Cir. 1985); *Ray v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 314424, at *1 (S.D. Ind. 2008)(Hamilton, J.) and *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.,* 2006 WL 665005 (N.D. Ill. 2006) is misplaced. None of these cases stand for the proposition that a plaintiff can seek discovery of events predating the applicable limitations period.

7

additional information from the date of production up to the close of discovery on February 29, 2008.

Federal Rule of Civil Procedure 26(e) only requires supplementation "if the party learns that in some material respect the disclosure or response *is incomplete or incorrect. . .*" (emphasis added). In this case, Plaintiffs' discovery requests – which were served on January 26, 2007 -- sought information from January 1, 2000 *to the present.* [Ex. C, Plaintiffs' Request for Production No. 27]. Rolls-Royce responded by producing information up to and including *the present* -- the date that it responded to Plaintiffs' particular discovery requests [May 2007 and October 2007 respectively]. As such, Rolls-Royce's responses were complete when made and do not as a matter of law trigger a duty to supplement under the Rules.

Further, Plaintiffs never requested that Rolls-Royce update the information on these spreadsheets until after the close of discovery. In fact, the first time Plaintiffs made this request was on June 6, 2008. [6/6/08 letter, Ex. D]. Given the complete nature of Rolls-Royce's earlier production, Rolls-Royce properly viewed Plaintiffs' June 6, 2008, request as an entirely new discovery request that had not previously been made in this matter and which was time-barred because it was after the February 29, 2008, discovery cutoff.

Nevertheless, even if the Court were to conclude that supplementation is warranted – which Rolls-Royce denies – it would be unreasonable in light of the circumstances of this case. In order for the Court to properly analyze this matter, a brief review of these spreadsheets and the information contained on them is warranted.

    a.    **DEF1-00031745-48**. These spreadsheets contain detailed employment information for all employees at Rolls Royce Corporation in specific salary grades from January 1, 2003 to the date the spreadsheets were created (including among other things, employee

names, identification numbers, genders, salary history, reasons for salary changes, degrees attained by the employees and the colleges or universities from which they obtained the degrees) and were provided by Rolls-Royce to Plaintiffs in response to Plaintiffs' Request for Production 27. These spreadsheets were created in connection with Rolls-Royce's initial discovery responses in April 2007. These spreadsheets are massive documents. As an example, DEF1-0031747 contains 34,623 separate entries.

      b.      **<u>DEF1-00031749</u>**. This spreadsheet contains comprehensive information from Rolls Royce Corporation on all job openings in pay grades 70 and higher, the date of the opening and a complete list of all employees, including employee identification numbers and genders of those who applied and those selected from January 1, 2003, to the date the spreadsheet was created in April 2007. This is an expansive document that contains 17,000 entries under one tab and 13,000 entries under a separate tab.

      c.      **<u>DEF1-00034195, DEF1-00034198</u>**. These spreadsheets contain merit data information in conjunction with Rolls-Royce's 2007 merit cycle. DEF1-00034198 contains information for the CFBU or Customer Facing Business Unit. DEF1-00034195 contains similar information, but excludes the CFBU.

      d.      **<u>DEF1-00035197-99.</u>** These spreadsheets contain detailed payroll information for 2003-2007. The spreadsheets each contain multiple tabs and several of them have more than 10,000 lines of information each.

      To date, Rolls-Royce has produced approximately 35,000 pages of documents to Plaintiffs in this matter. The costs to Rolls-Royce of conducting this massive production, in terms of legal expenses, labor and other resources has been staggering. Requiring Rolls-Royce to go back and research all of the information captured on these spreadsheets and update each of

them from the moment of production up to and including the close of discovery would impose an overly harsh and unreasonable burden on Rolls-Royce.

Furthermore, the updated information sought by Plaintiffs does not even directly relate to the named Plaintiffs' claims. The only conceivable relevance that this information could have would be directed to Plaintiffs' anticipated motion to certify this matter as a class action. However, Rolls-Royce already has produced detailed information regarding the compensation of its employees and the employees that have been selected for promotions. To the extent that Plaintiffs intended to use this information to support a potential class action, they already have had this information in their possession for over a year. Plaintiffs have provided no justification for forcing Rolls-Royce to re-do these ten spreadsheets and update them with information up to the close of discovery. Nor have Plaintiffs provided any credible explanation for why information from this time period would support a class action when the information Rolls-Royce already has produced -- which covers *several years* -- would not.

**C.     Plaintiffs' Requests For Production 27, 28, 30, 35, and 40.**

At all times relevant to this matter, Plaintiff Randall was employed in salary grades 74D, 75B, 75C and 75D. [Ex. A, p. 134]. At all times relevant to this matter, Plaintiff Pepmeier was employed in salary grades 75B and 75C. [Ex. B, pp. 91, 118, 120-21].

In its supplemental production as part of working through the discovery disputes, Rolls-Royce consistently produced information for individuals who occupied the same salary grades as the named Plaintiffs and during the time period encompassed by the respective statutes of limitation [May 26, 2004 forward].

Although somewhat unclear, Plaintiffs argument with respect to the identified Requests for Production seems to center on having Rolls-Royce supplement its production with (a)

information from January 1, 2003 forward and (b) information for individuals in salary grades 71 and higher.

As set forth in detail above, information regarding employees prior to May 26, 2004 -- the cutoff date for the maximum time period encompassed by the statute of limitations -- is irrelevant and will not lead to the discovery of admissible evidence.

Additionally, Plaintiffs provide no justification for requiring Rolls-Royce to furnish information on individuals in salary grades *lower* than the named Plaintiffs. Plaintiffs correctly point out that in its initial round of production in May and October 2007, Rolls-Royce produced information encompassing salary grades 71 and higher. However, what Plaintiffs conveniently ignore is that when Rolls-Royce produced this information, Julie Irish -- whose salary grade was 71A -- still was a party to this lawsuit. [Irish Dep., Ex. E, pp. 54-55, 92-93]. Irish subsequently dismissed her claims on March 10, 2008. [Dkt. 80]. Without Irish, individuals in salary grades 71-72 would have no bearing on this matter. Thus, neither Randall nor Pepmeier are directly comparable to individuals employed in salary grades 71-72 and Plaintiffs' motion to compel this information should be denied. *See Patterson,* 281 F.3d at 680 (holding that similarly situated individual must be directly comparable to plaintiff in all material respects); *Chavez,* 206 F.R.D. at 620 (denying motion to compel where plaintiff sought information from non-similarly situated individuals).

      **D.**      **The Court Should Deny Plaintiffs' Request To Obtain Copies of Privileged And Unproduced Documents.**

Plaintiffs' final request is to obtain copies of Systemic Compensation Analysis documents for 2006 and 2007. The Court previously addressed a 2005 Systemic Compensation Analysis document that had been inadvertently produced by Rolls-Royce to Plaintiffs, and ruled

11

that because of the nature of the disclosure of that document, any privilege associated with it had been waived. [Dkt. 89].

Unlike the 2005 document, no Systemic Compensation Analysis documents for 2006, 2007 or any other time period have been produced in this matter, inadvertently or otherwise. In fact, there is no record evidence that such analyses were conducted for 2006 or 2007. As a result, no waiver of the attorney-client privilege attaches to these alleged documents.

The Seventh Circuit applies the following principles for analyzing the attorney-client privilege (1) where legal advice of any kind is sought, (2) from a professional legal adviser in a capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at the client's instance permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection is waived. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (*citing* 8 Wigmore § 2292). The inquiry into whether certain documents are subject to the privilege "must be made and sustained on a question-by-question or document-by-document basis." *EEOC v. Int'l Profit Assoc.,* 206 F.R.D. 215, 218 (N.D. Ill. 2002), quoting *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991).

It is well established that the attorney-client privilege extends to a corporation's in-house counsel. *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)(stating corporate employees' communications to counsel for corporation in order to secure legal advice for corporation are privileged). Thus, a study or analysis created at the direction of in-house counsel is covered by the privilege. *See Williams v. Sprint/United Management Co.,* 2006 WL 2850659, at *3 (D. Kan. 2006)(adverse impact analyses documents generated at the direction of counsel were attorney-client privileged communications made in confidence for the purpose of securing legal advice and, thus, protected from disclosure by the attorney-client privilege). Further, materials created

12

by a third-party, acting under the instructions of an attorney and as an agent for the attorney, also are covered by the privilege. *See, e.g., In re: Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000)(holding that material held by accountant acting as agent for attorney came within the scope of the attorney-client privilege).

Here, to the extent that additional analyses were commissioned by Rolls-Royce's in-house counsel, these documents have not been inadvertently disclosed and there has been no waiver of the privilege. Accordingly, any such Systemic Compensation Analysis documents should be entitled to the continued protections of the attorney-client privilege and protected from disclosure in this matter.

### III.  Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.

Respectfully submitted,

*s/ R. Anthony Prather*
R. Anthony Prather
tony.prather@btlaw.com
Hannesson I. Murphy
hmurphy@btlaw.com
**BARNES & THORNBURG**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        Kevin Betz - kbetz@kbetzlaw.com
        Sandra L. Blevins - sblevins@betzadvocates.com

        *s/ R. Anthony Prather*
        R. Anthony Prather

INDS02 HMURPHY 1002427v1